UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MARVIN LEE PRINCE,

                Plaintiff,                Case No. 1:12-cv-163

v.                                      Honorable Janet T. Neff

JOHN PRELESNIK et al.,

                Defendants.

_____/

**OPINION**

          This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed because it both fails to state a claim and is frivolous.

**Factual Allegations**

Plaintiff Marvin Lee Prince presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Richard A. Handlon Correctional Facility (MTU).  He sues MTU Warden John Prelesnik, an unknown MTU corrections officer, an unknown MTU supervisor, and the MDOC.

On February 21, 2010, Plaintiff apparently experienced extreme abdominal pain and began to have blood in his stools.  By February 22, 2010, Plaintiff was obviously very ill, and he was taken to health care.  After medical providers determined that Plaintiff had lost a lot of blood, he was transported to the hospital.  Surgery was performed to stop his abdominal bleeding.

Plaintiff does not allege that he was denied medical care.  Instead, after acknowledging that he is mentally ill, Plaintiff contends that Defendants have subjected him to torture in retaliation for his having filed two prior lawsuits that were dismissed as frivolous.  *See Prince v. Ryder et al.*, No. 1:07-cv-369 (W.D. Mich. Jul. 27, 2007); *Prince v. Mich. Dep't of Corr.*, 1:05-cv-854 (W.D. Mich. Feb. 3, 2006).  Plaintiff alleges that the MDOC uses a hazardous energy apparatus (sometimes referred to as a "death ray," a "particle accelerator," and "high energy physics") to direct energy into the prisoner's "vacuum-sealed" cell.  (*See, e.g.,* Compl. ¶¶ 1, 2(d), docket #1, Page ID##1-2.)  Plaintiff alleges that, on February 21, 2010, Defendant unknown corrections officer activated the energy ray, causing Plaintiff to experience an internal cut and bleeding.  More specifically, Plaintiff makes the following allegations (verbatim):

> While on his bunk durning the count, Plaintiff was attacked by a corrections officer in the security room.  Approximately 2 minutes into this Formal count Plaintiff began feeling a intense penertrating burning sensation going across his lower stomach area.  This intense Pain was so tremendous it caused Plaintiff to jump off his bunk and pull his paints down and shit in his cell trashcan before hie did it on himself.

. . .

> This attack was in retaliation for informing the Feds about the misuse of apparatus concealed being used and reporting to the new Gov. Snyder the mismanagement of funds.  Employees has a right to know they work in a hazardous energy type environment Where Plaintiff is being tortured in violation of law, raped and abused for trying to seek compensation for his injuries according to law and deprived by use of modern technology and tactics by Defendants.

(Compl., ¶¶ 13, 15.)

Plaintiff also alleges that the use of the hazardous-energy apparatus causes unconsciousness.  According to Plaintiff, he is housed in a wing of the prison that also houses a majority-Muslim population.   He contends that Defendants have used the device to render him unconscious, thereby permitting other prisoners to rape him:

> Prison officials now house us in Vacuum Sealed units to create any atmosphere desired.  They are also using a apparatus Plaintiff called in his Past Complaints as a "Death ray" to a "Particle accelerator" to "high energy Physics" apparatus through various complaints he discovered the apparatus being used is veiled in Prison Operating Policy Directive 04.03.101A Control of Hazardous energy.

> This apparatus also Produces substances and other Procedures calculated to disrupt the senses or Personality that results in a substantial alteration of mental functioning that is manifested by a visibly demonstrable manner any Judge would deem a person incompetent. . . .

. . .

> Prison officials uses the outside security lights and turn them towards the unit window to light up the cell.

> Once the cell is light up they use they hidden cameras to see in the cell. When you lie on the bunk they turn on a current that Feels like a vibrator in the bunk mattress.  Through this current you become very sleeply until you are unconscious. When the act of rape or staff shooting Piss up your anus or rectum a current is then used to send a tingling feeling in your heart waking you up.  Since you could not catch the individual in that degrading and humiliating act what do you do.  Plaintiff is not a liar.  So he has to reveal what is being used to cause him harm and injuries.

(*Id.*, ¶¶48-49, 51-52 (verbatim).)

Plaintiff also alleges that he was placed in segregation for disobeying a direct order, after which his security classification was changed by Assistant Deputy Warden Meagher, who is not a Defendant in this action.  Plaintiff was then placed in a unit with many Muslims and sexual predators.  In addition, unnamed staff allegedly failed to send out Plaintiff's mail on unspecified occasions.  Further, Plaintiff complains that unnamed officers failed to properly credit money to his account to allow phone use and to pay for legal and medical copies.  Plaintiff contends that the allegations show violations of the Fifth, Eighth and Fourteenth Amendments.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

**Discussion**

I.       Failure to State a Claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at

1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under

28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994). Plaintiff fails to make factual allegations against Defendants Warden

Prelesnik and the unknown supervisor, other than his claim that they failed to stop the unknown

corrections officer from using the death ray. Government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious

liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir.

2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not

enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at

575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, §

1983 liability may not be imposed simply because a supervisor denied an administrative grievance

or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d

295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

Plaintiff has failed to allege that Defendants Prelesnik and the unknown supervisor engaged in any

active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Moreover, to the extent that Plaintiff alleges that on unspecified occasions his mail

was not sent, that his financial deposits were not properly credited, and that his security

classification was changed, he fails entirely to allege that any named Defendant was responsible for

the alleged actions. He therefore fails to state a claim against any Defendant for conduct related to

those allegations. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff

must make sufficient allegations to give a defendant fair notice of the claim).

II.     Frivolousness

An action may be dismissed as frivolous if "it lacks an arguable basis either in law

or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198

(6th Cir.1990). Claims that lack an arguable or rational basis in law include claims for which the

defendants are clearly entitled to immunity and claims of infringement of a legal interest which

clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or

delusional scenarios. *Neitzk*e, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the

"unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims

whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. "A finding of factual

frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly

incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton*

*v. Hernandez*, 504 U.S. 25, 32 (1992).  Examples of claims lacking rational facts include a prisoner's

assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a

genie granted a warden's wish to deny prisoners any access to legal texts. *See Neitzke*, 490 U.S. at

327-28;  *Lawler*, 898 F.2d at 1198-99.  An *in forma pauperis* complaint may not be dismissed,

however, merely because the court believes that the plaintiff's allegations are unlikely.  *Id.*

### A.      Legal frivolousness

Plaintiff may not maintain a § 1983 action against the Michigan Department of

Corrections.  Regardless of the form of relief requested, the states and their departments are immune

under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity

or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782

(1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979),

and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has

specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.

*See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No.

00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting

through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983

for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the Michigan Department of

Corrections.

### B.        Factual frivolousness

              Plaintiff's allegations also lack a rational basis in fact.  Although certain limited

allegations of Plaintiff's complaint may not "strain credulity" sufficiently to be considered frivolous,

*see Lawler*, 898 F.2d at 1198, the complaint as a whole plainly is irrational.  Indeed, Plaintiff's

allegations about Defendants' alleged use of death rays are consistent with his admission of mental

illness.  Moreover, the Court previously has dismissed two actions filed by Plaintiff that alleged that

the MDOC uses chemicals and electrical current to cause damage to internal organs, to cause

prisoners to become unconscious and subject to rape, and to cause prisoners to become mentally

incompetent.  *See Prince v. Ryder et al.*, No. 1:07-cv-369 (W.D. Mich. Jul. 27, 2007) (rejecting as

frivolous allegation that the MDOC was "using chemical gas pump in units lightly and using that

devise thats when turned on it radiates some kind of electrical current that cause your internal organs

to s[w]ell, your veins to swell which last time it sent me into convulses which cause major, damage

to heart and neurological damage"); *Prince v. Mich. Dep't of Corr.*, 1:05-cv-854 (W.D. Mich. Feb.

3, 2006) (rejecting as frivolous allegations about the use of odorless chemicals and death rays to

cause injury to prisoners and to render them mentally incompetent).  Accordingly, the Court will

dismiss Plaintiff's action because it is frivolous.  *See Burnes v. Clinton*, No. 00-3208, 2000 WL

1800510, at *1 (6th Cir. Nov. 30, 2000) (complaint alleging that President Clinton and various other

high-ranking federal officials were subjecting her to electronic surveillance, mind-reading, and

remote torture due to her bisexuality was properly dismissed as frivolous); *Graves v. Cohen*, No. 99-

4476, 2000 WL 1720647, at *1 (6th Cir. Nov. 7, 2000) (plaintiff's claim concerning the AIDS virus

- 8 -

being injected into the American population by the Pentagon was properly dismissed as frivolous); *Dowell v. Tennessee*, No. 92-6125, 1993 WL 169052, at *1 (6th Cir. May 18, 1993) (affirming district court's dismissal of claims of conspiracy to inflict emotional distress as fantastic and delusional).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because it both fails to state a claim and is frivolous.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  April 5, 2012                  /s/ Janet T. Neff
                                       Janet T. Neff
                                       United States District Judge